```
        IN THE UNITED STATES DISTRICT COURT
      FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
                 HATTIESBURG DIVISION
```

RICHARD F. MCCARTHY AND
KATHERINE S. MCCARTHY                                     PLAINTIFFS

VERSUS                          CIVIL ACTION NO. 2:05cv2063-DCB-JMR

PRENTISS E. SMITH, JR. AND
HEALTH SYSTEMS, INC.                                      DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter comes before the Court on the plaintiffs' Motion for Partial Summary Judgment [**docket entry no. 8**]. Having reviewed the Motion, briefs, applicable statutory and case law and being otherwise fully advised as to the premises, the Court finds as follows:

### FACTS AND PROCEDURAL HISTORY

Prentiss E. Smith, Jr. and Katherine S. McCarthy are the only two children of the late Prentiss E. Smith, who owned a substantial amount of real property at the time of his death in 1958. Under the terms of his will, he devised an undivided one-half interest to his widow, Katie A. Smith, and an undivided one-fourth interest to each of his children in that real property. According to Prentiss E. Smith, Jr., the property was never partited. See Counterclaim, ¶8. Over the forty-five years following Smith Sr.'s death, essentially all of the income derived from this property was paid into bank accounts maintained by Katie A. Smith, and those funds were used for her support. See id., ¶9.

According to Prentiss E. Smith, Jr., the McCarthys asked him

to convey his interest in some of the devised property to Katherine McCarthy in the 1990s.  He alleges that the McCarthys expressed concern that he might experience difficulties in his personal dealings which could lead to the imposition of judgment liens against the jointly-held property.  He claims that he transferred the property to Katherine McCarthy for the purpose of insuring that the property generating income used to support Katie A. Smith would not become encumbered.  See id., ¶10.  However, Prentiss E. Smith, Jr. claims that Katherine McCarthy told him she would hold the property in trust for him and that she would convey the land back to him at a later time.  See id., ¶11.  After the death of Katie A. Smith, Katherine McCarthy filed a pleading in the estate proceeding before the Chancery Court of Forrest County, Mississippi, on May 12, 2005, asserting that the deeds executed and delivered by Prentiss E. Smith, Jr. conveyed to her all of his interest in those properties with no restrictions or reservations.  See Counterclaim, at ¶13.  Thus, contrary to Smith, Jr.'s claim that she agreed to hold the property in trust for his benefit, Katherine McCarthy claims to own the property in fee simple.

On August 18, 2005, Richard F. McCarthy[1] and Katherine S. McCarthy filed a complaint in the Chancery Court of Perry County, Mississippi, for partition of property jointly owned with the

---

[1] Richard McCarthy has passed away since the filing of this action.

defendants, Prentiss E. Smith Jr. and Health Systems, Inc.  In said suit, the plaintiffs request that the land in question be appraised by a disinterested appraiser, and that it should thereafter be sold and the proceeds therefrom be distributed to the parties according to their individual ownership interests in the land.  The plaintiffs also claim that defendant Smith "has received all income in the form of rent, hunting leases, and other forms of income from the property and has not accounted to the Plaintiffs." Compl., ¶9.  Therefore, the plaintiffs also request an accounting of the amount of income from the jointly-owned property and ask, moreover, that the amount attributable to them be charged against the sales proceeds owing to defendant Smith.

The defendants removed the action from the Chancery Court of Perry County on September 19, 2005, on the basis of diversity jurisdiction.  See docket entry no. 1.  Thereafter, the defendants filed their answer along with a counterclaim.  In Count I of the counterclaim, the defendants ask for an accounting of property income allegedly not shared with defendant Smith or Health Systems in accordance with their ownership interests.  See Counterclaim, ¶6. In the second count, the defendants allege that the McCarthys hold the property conveyed to her by Smith in constructive trust for him.  Therefore, Smith seeks to have the land reconveyed to him as if the deeds had never been executed and delivered.  Count III is a contingent claim for reformation which is beyond the scope of

the present motion.

On January 10, 2006, the McCarthys filed the instant motion for partial summary judgment in which they claim that Count II of the defendants' counterclaim is barred by the applicable statute of limitations.  See docket entry no. 8.

## I.  Jurisdiction

Federal courts are courts of limited jurisdiction.  Removing defendants bear the burden of establishing federal subject matter jurisdiction.  See Pullman Co. v. Jenkins, 305 U.S. 534, 540 (1939) Carson v. Dunham, 121 U.S. 421, 425-26 (1887); Jernigan v. Ashland Oil Co., 989 F.2d 812, 815 (5th Cir. 1993); Gaitor v. Peninsular & Occidental S.S. Co., 287 F.2d 252, 253-54 (5th Cir. 1961).  "Only state-court actions that could have originally been filed in federal court may be removed to federal court by the defendant." Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987).  Thus, where there is no federal question basis for jurisdiction, as in this case, the defendant bears the burden of showing that diversity jurisdiction exists.  Pursuant to 28 U.S.C. § 1332, federal courts have subject matter jurisdiction over cases where "the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States[.]"

Both plaintiffs are adult resident citizens of Forrest County, Mississippi. Prentiss E. Smith, Jr. is a citizen of Louisiana, and

-4-

Health Systems, Inc. is a company incorporated in Louisiana with its principal place of business in Louisiana. See Complaint for Partition, ¶¶1-3. Thus, complete diversity exists between the parties. The subject matter of this action involves a substantial amount of property as well as the income derived from that property over the course of a number of years. The Court finds, therefore, that the amount in controversy has also been met. Thus, subject matter jurisdiction exists, and the Court will proceed to address the plaintiffs' pending motion for partial summary judgment.

**II. Motion for Partial Summary Judgment**

In their motion, the plaintiffs allege that they are entitled to judgment as a matter of law as to the second count of the defendants' counterclaim concerning allegations that the property was held in constructive trust for Smith by Katherine McCarthy. The plaintiffs contend that the time limits set forth by three statutes of limitations, Miss. Code Ann. §§ 15-1-39, 15-1-7 and 15-1-9, act to bar the defendants' claim for constructive trust.

*a.   Definition of constructive trust*

A constructive trust is "one that arises by operation of law against one who, by fraud, actual or constructive, by duress or abuse of confidence, by commission of wrong, or by any form of unconscionable conduct, artifice, concealment, or questionable means, or who in any way against equity and good conscience, either has obtained or holds the legal right to property which he [or she]

-5-

ought not, in equity and good conscience, hold and enjoy." Allred v. Fairchild, 785 So. 2d 1064, 1067 (Miss. 2001). See also 76 Am. Jur. 2d Trusts § 168 (stating that a constructive trust is formed "when one has acquired legal title to property under such circumstances that he or she may not in good conscience retain the beneficial interest thereto"). The object of a constructive trust "is to restore to a rightful owner property wrongfully withheld by a defendant." 76 Am. Jur. 2d Trusts § 168. "It is unjust enrichment under cover of the relation of confidence, which puts the court in motion." Russell v. Douglas, 138 So. 2d 730 (Miss. 1962).

b.  *Does Miss. Code Ann. § 15-1-39 bar the counterclaim for constructive trust?*

Mississippi Code Annotated § 15-1-39 (Supp. 1993) provides:

> Bills for relief, in case of the existence of a trust not cognizable by the courts of common law and in all other cases not herein provided for, shall be filed within ten years after the cause thereof shall accrue and not after . . .

Thus, the relevant question is at what point the cause for the constructive trust claim accrued, if at all, to defendant Smith, Jr. in this case. If more than ten years passed from the date of the accrual to the date of filing the counterclaim, September 27, 2005, then that count would be time-barred.

The plaintiffs allege that the defendant's counterclaim for constructive trust accrued on the date that Smith transferred his property to Katherine McCarthy in 1994. Thus, they contend that

-6-

the current action would be barred. In counterpoint, the defendants claim that the action for constructive trust did not accrue until Katherine McCarthy indicated in a pleading filed in Katie Smith's estate proceeding in 2005 that she was claiming the conveyed land in fee simple.

*(1) What is the date of accrual for a constructive trust action?*

In Alvarez v. Coleman, 642 So. 2d 361 (Miss. 1994), Vernard and Dixie Droke executed an agreement in 1981 whereby they transferred all of their property to themselves as trustees, with William Alvarez as co-trustee. Alvarez, 642 So. 2d at 362. The trust was to be used for the support of the Drokes until their deaths, at which time Alvarez was to divide the trust property in half, creating trust A for Dixie's designees, her great-grandchildren, and trust B for Vernard's designee, his church. Id. In 1981, Vernard and Dixie also executed nearly identical wills, leaving nearly all of their wealth to the trust. Id. The trust was revocable by either Dixie or Vernard until the death of either. Id. After Dixie's death in 1982, Vernard revoked the trust, and in 1987, he executed a new will leaving his entire estate to his nieces. Alvarez, 642 So. 2d at 363.

After Vernard's death in 1988, his 1981 will was offered into probate by Alvarez and his 1987 will was offered by one of Vernard's nieces. The chancellor held that the trust was ineffective because it had not been properly recorded; therefore,

-7-

because he could not take advantage of the ten-year statute of limitations which governed enforcement of trusts, Alvarez was barred from seeking relief under a six-year statute of limitations. Id. On appeal, Alvarez, representing Dixie's great grandchildren, successfully argued that though the trust agreement had not formally come into existence through the recordation process, a constructive trust, based on equitable principles, had been formed. Id. at 368-69.

Having found that a constructive trust existed which bound Vernard to honor Dixie's intentions before she died, the Supreme Court next wrestled with the question of when the ten-year statute of limitations should have begun to run. Alvarez, 642 So. 2d at 374. The court noted that "in the absence of fraud and concealment, the statute runs from the time when the act was done by which the party became chargeable as trustee by implication, which is to say, from the time when the cestui que trust could have enforced his right by suit." Id. (quoting Rimmer v. Austin, 4 So. 2d 224 (Miss. 1941)). The court identified two points in time which might be the proper date of accrual: (1) the date of Dixie's death, when the express trust, had it been effective, would have become irrevocable; or (2) the date when Vernard sent his revocation letter to Alvarez, revoking the trust. Id. at 374-75. The court reasoned that the first date might start the filing period because it was at that point that Vernard could "fairly be

said to have held half of the marital estate in constructive trust for Dixie's designees." Id. at 374.  The court found the second date could be considered because Vernard's revocation "put Alvarez on notice that Vernard did not intend to carry out the terms of the trust.  That is, the cause of action did not accrue until Alvarez had reason to know of Vernard['s] intent not to comply with the join testamentary plan." Id. at 375.

Finding that both dates were within the ten-year period prior to the filing of the action, the Mississippi Supreme Court declined to decide which one should be considered as the date of accrual for the constructive trust claim.  The defendants argue that in Alvarez, the trust had been created at the time Dixie and Vernard executed their wills in 1981.  See Memo. in Opposition to Motion for Partial Summary Judgment, at 5.  Thus, they contend that the Mississippi Supreme Court looked to the date of the breach of the trust, not the date of its formation, when it held that the action had been timely brought.

This argument is incorrect.  The court held that a formal trust had not been created in 1981, but that a constructive trust was formed when Vernard breached the agreement he had with Dixie by revoking that agreement after her death in 1982.  See Alvarez, 642 So. 2d at 370 ("A constructive trust arose from the confidential relationship between Vernard and Dixie, their mutual promises in the wills and the trust agreement, and Vernard's breach of the

agreement"). In other words, it was the breach of the agreement contained in their reciprocal wills that finally completed the formation of the constructive trust.

Here, both parties assume that the constructive trust, if there was one, would have been created on the date that the deeds were executed. The plaintiffs assert that this alleged date of creation began the time limit for the action. The defendants contend that though the trust was created when the deeds were executed, the time for filing their action did not begin until Katherine McCarthy acted inconsistently with the trust. As set forth above, a constructive trust is an equitable remedy used to redress inequitable conduct. It is not based upon a formal agreement. What is required for the formation of a constructive trust, is some inequity attributable to the defendant. Take, for example, the case of <u>Allred v. Fairchild</u>, 785 So. 2d 1064 (Miss. 2001).

In <u>Allred</u>, William Allred and Wiley Fairchild had been doing business with each other in the area of oil, gas and minerals. Under their arrangement, Allred would secure the mineral or other interests and Fairchild would finance the ventures. As compensation for his efforts, Allred was normally paid either a cash commission or conveyed a percentage of the newly acquired interests. In the early 1970s, Allred secured the option to purchase a substantial oil, gas and mineral interest from a third

-10-

party.  Per the normal arrangement, Allred approached Fairchild to finance the purchase.  The parties orally agreed that Allred would receive a 10% interest in the properties which would be conveyed after the acquisition costs were recaptured from the property.  Over the course of a number of years, Allred frequently inquired as to the status of his commission; however, Fairchild continually assured him that the acquisition costs had not yet been recaptured.  After a disagreement between the parties, Allred eventually brought suit in 1990, alleging that Fairchild held a 10% interest in the property in constructive trust for the plaintiff.  <u>Allred</u>, 765 So. 2d at 1067.

Evidence at trial established that, despite Fairchild's communications to Allred to the contrary, the acquisition costs were fully recouped by 1981.  The trial court held, however, that no constructive trust was formed and that a more restrictive statute of limitations acted to bar Allred's suit.  <u>Id.</u> at 1068.  That holding was reversed by the Mississippi Supreme Court on appeal.  <u>Id.</u>  The Supreme Court noted that Allred and Fairchild entered into their agreement in December, 1973; that the sale of the property closed in February, 1974; and that the suit was filed in December 1990.  <u>Id.</u>  In spite of the fact that seventeen (17) years had passed between the oral contract and the filing of the suit, the court found that Allred's constructive trust action did not accrue until 1981, which was within the ten-year period set

forth by § 15-1-39.  Id. at 1071.  Thus, it was not the commission agreement that gave rise to the action for constructive trust, but rather it was the breach of the agreement, i.e., Fairchild's withholding of the commission once it became due, that created the cause of action.

Therefore, in determining whether an action for constructive trust has been timely brought, the Court will look to the time of the inequitable conduct to ascertain when the action accrued. See Wholey v. Cal-Maine Foods, Inc., 530 So. 2d 136, 140-41 (Miss. 1988) ("The statute runs from the time when the act was done by which the party became chargeable as trustee by implication"; holding that the "act of overreaching" by the defendant created the constructive trust); Thames v. Holcomb, 92 So. 2d 548, 551 (Miss. 1957) ("The statute runs against the cause of action.  It begins to do so from the time the wrong is committed by which the party becomes chargeable by legal implication"; date of accrual of action began the day that the defendant's promised conveyance became due and he did not deliver) (internal quotation omitted); Rimmer, 4 So. 2d at 225 ("[Constructive trusts are not created by agreement . . .; they are products of conduct"); W.W. Allen, Annotation, When Statute of Limitations Starts to Run Against Enforcement of Constructive Trust, 55 A.L.R.2d 220 (1957) (stating that in cases where a person became chargeable as a constructive trustee based upon an oral promise to reconvey the property, but who later

repudiated or breached the obligation, it is usually held that "the statute does not begin to run until the promise, agreement or understanding is breached or repudiated and the fact thereof is brought home to the person entitled").

In this suit, the act which culminated in the creation of the constructive trust, if there is one, would not be the agreement allegedly entered into by the parties whereby Katherine McCarthy would hold Prentiss Smith, Jr.'s land in "trust"; rather, it would be when the McCarthys indicated that they would not act according to that alleged agreement. The defendants allegedly became aware of the McCarthys' intentions on May 12, 2005. Therefore, the cause of action for constructive trust arose on that day and the current suit is not barred by Miss. Code Ann. § 15-1-39.

c.   *Do the other cited statutes bar the defendant's counterclaim for constructive trust?*

The plaintiffs also argue that the defendants have failed to show how the other two statutes of limitations, §§ 15-1-7 and 15-1-9, would not apply to bar Smith, Jr.'s constructive trust counterclaim. In <u>Alvarez</u>, however, the Mississippi Supreme Court stated that "Miss. Code Ann. § 15-1-39 applies to either express or constructive trusts." 642 So. 2d at 373. The counter-plaintiffs have asserted a constructive trust claim against the McCarthys; therefore, § 15-1-39 is the proper statute to analyze whether that specific claim is barred.

It should be noted, however, that the Court makes no

determination today as to whether a constructive trust was, in fact, formed under the facts of this case.[2]  Instead, the holding is limited only to discount the plaintiffs' contention that the defendants' counterclaim for constructive trust is barred by various statutes of limitation.  Taking the allegations in the counterclaim to be true, the Court finds that the defendants' claim for constructive trust is not time barred.

## CONCLUSION

It is this Court's conclusion that the plaintiffs' Motion for Partial Summary Judgment, as discussed above, is not well-taken and should be denied.  Accordingly,

IT IS HEREBY ORDERED that the plaintiffs' Motion for Partial Summary Judgment [**docket entry no. 8**] is **DENIED**;

SO ORDERED, this the   30th   day of June, 2006.

                                    s/ David Bramlette
                                 UNITED STATES DISTRICT JUDGE

---

[2] Whether a constructive trust exists or not is a matter of law for the court to decide.  See Allred, 785 So. 2d at 1068.  The evidence necessary to establish such a trust must be "clear and convincing."  Planters Bank, 555 So. 2d at 1034; Allgood v. Allgood, 473 So. 2d 416, 421 (Miss. 1985).

-14-